Argued and submitted May 4, judgment of Tax Court reversed; case remanded to
Tax Court for further proceedings July 16, 1998

## WESTERN GENERATION AGENCY,
*Respondent,*

*v.*

## DEPARTMENT OF REVENUE,
State of Oregon,
*Appellant.*

## (OTC 3860; SC S44164)

959 P2d 80

Robert W. Muir, Assistant Attorney General, Salem, argued the cause for appellant. Joseph A. Laronge, Assistant Attorney General, and Hardy Myers, Attorney General, filed the briefs.

Thomas M. Grim, Portland, argued the cause and filed the brief for respondent. With him on the brief were James E. Benedict, Susan T. Felstiner, and Cable Huston Benedict Haagensen & Lloyd, LLP, Portland.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is a direct appeal from a decision of the Tax Court. The issue presented is whether property that is jointly controlled by a people's utility district and a municipal utility through an intergovernmental entity that was created pursuant to ORS chapter 190 is taxable. The Oregon Tax Court ruled that the property is not subject to taxation. The Department of Revenue (DOR) appeals from that ruling. We conclude that, because the property is controlled by a people's utility district, it is taxable under ORS 261.050, at least to the extent of that control. We reverse the decision of the Tax Court and remand the case to that court for further proceedings.[1]

The property at issue in this case is an electricity generating facility (facility) owned by an intergovernmental entity, Western Generation Agency (WGA), that was created by an agreement between the Clatskanie People's Utility District (CPUD) and the City of Eugene Water and Electric Board (EWEB) pursuant to ORS 190.010(5).[2] The CPUD is a people's utility district created under the provisions of ORS chapter 261. EWEB is a municipal utility created under the Eugene City Charter. Pursuant to the intergovernmental agreement between CPUD and EWEB, WGA issued bonds for the purpose of constructing and operating an electrical generation facility located in Wauna, Oregon. According to that intergovernmental agreement, WGA was created "for

---

[1] When Western Generation Agency (WGA) commenced this action in 1995, ORS 305.445 provided for *de novo* review of Tax Court decisions. That statute was amended in 1997 to provide, in part, that this court's "review of either a decision or order of the tax court judge shall be limited to errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order." Because the material facts are not in dispute, we need not decide whether the present or previous version of ORS 305.445 applies in this case.

[2] ORS 190.010(5) provides:

"A unit of local government may enter into a written agreement with any other unit or units of local government for the performance of any or all functions and activities that a party to the agreement, its officers or agencies, have authority to perform. The agreement may provide for the performance of a function or activity:

"(5) By an intergovernmental entity created by the agreement and governed by a board or commission appointed by, responsible to and acting on behalf of the units of local government that are parties to the agreement * * *."

the purpose of constructing, owning and operating the Project and such other electrical generation and transmission facilities as the parties agree to."

The principal office of WGA is located at CPUD's offices. WGA is governed by a board of directors "appointed by, responsible to and acting on behalf of" both the people's utility district and the municipal corporation. The board of directors consists of six members, three appointed by CPUD and three appointed by EWEB. Board members "serve at the pleasure of" their appointing governing bodies. In the event of a vacancy on the board, the original appointing governing body may appoint the successor of its choice. WGA has no employees of its own.

The facility is situated on land that is owned by the James River Paper Company (James River) and leased to WGA. James River owns and operates a pulp and paper manufacturing facility next to the property. James River developed the site and constructed the facility for WGA, and will supply the fuel and thermal energy (steam) to the facility. James River also will operate the facility and provide maintenance services for it. WGA has agreed to sell 100 percent of the power that it generates either to the Bonneville Power Administration or to EWEB.

DOR assessed the facility as taxable for the tax year 1994-95 pursuant to its authority under ORS 308.515. ORS 308.515(1) requires DOR annually to assess property used or held "by any company" for the purpose of selling electricity for consumption by other persons. "Company" is defined in ORS 308.505(2) to include a people's utility district. WGA challenged the assessment, asserting that it is a public or municipal corporation whose property is completely exempt from taxation under ORS 307.090(1).[3] Alternatively, WGA argued that at least the portion of the property funded by

---

[3] ORS 307.090(1) provides:

"Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water districts, housing authorities and all other public or municipal corporations in this state, is exempt from taxation."

EWEB is exempt under ORS 307.090(1), because EWEB itself is exempt as an agency of the city.

The DOR rejected both of WGA's arguments. It issued an opinion and order in which it determined that the facility was subject to taxation under ORS 308.515. WGA then filed a complaint with the Tax Court requesting relief from that opinion and order. The parties filed cross-motions for summary judgment. The Tax Court granted WGA's motion and denied DOR's motion, holding that the property is exempt from taxation under ORS 307.090(1).

The Tax Court stated that its holding is based on the principle that property owned by a state or local government unit is presumed not to be taxable, while private property is presumed to be taxable. The Tax Court concluded that any doubts must be resolved in favor of an exemption for a publicly owned entity: "WGA is a municipal quasi-corporation whose property is exempt from taxation unless the legislature expressly manifests an intent to subject it to tax. The legislature has not expressed such an intent, as it has with [people's utility districts] and joint cooperative agencies." Therefore, that court reasoned, the property is not subject to tax.

■ DOR's primary argument on appeal is that the facility is taxable under ORS 261.050, which provides:

> "All property * * * *owned, used, operated or controlled by any people's utility district*, in or for the production, transmission, distribution, or furnishing of electric power or energy or electric service for or to the public *shall be assessed and taxed* in the same manner * * * as [is] provided by law in respect to assessment and taxation of similar property owned, used, operated or controlled by private corporations or individuals for the purpose of furnishing electric power or energy or electric service to the public."

(Emphasis added.) Under that statute, property is taxable if it is either "owned, used, operated or controlled" by a people's utility district.[4] DOR asserts that, if any one of those four conditions is present, the relevant property is taxable. In this

---

[4] WGA objects to the court's consideration of DOR's argument based on ORS 261.050, on the ground that the issue of the applicability of that statute was not preserved for review. For purposes of preserving error, the court has stated that it is essential that a party raise an *issue* at trial, but it is less important to identify a

case, DOR argues, the property at issue is "controlled" by a people's utility district, CPUD, and therefore it is, at least to some extent, taxable. For the reasons that follow, we agree.

■■■ In construing a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). At the first stage of our analysis, we look at the text and context of the provision as the best evidence of the legislature's intent. *PGE*, 317 Or at 610-11. In construing the text and context, we consider rules of construction that bear directly on how to read the text. *Id.* at 611. One such rule is that "words of common usage typically should be given their plain, natural, and ordinary meaning." *Ibid.* If the legislature's intent is clear after this analysis, further inquiry is unnecessary. *Ibid.*

As noted, ORS 261.050 provides that property that is "controlled by any people's utility district" for the production of electricity "shall be assessed and taxed in the same manner and for the same purposes" provided by law for the taxation of similar property held by private entities. The term "control" is not defined either in ORS 261.050 or elsewhere in ORS chapter 261. In ordinary usage, however, "control" means:

> "1 a:  the act or fact of controlling * * *: power or authority
> to guide or manage: directing or restraining domination."

*Webster's Third New Int'l Dictionary*, 496 (unabridged ed 1993). Thus, we can state from the statute's text (which context does not alter) that a people's utility district "controls" property if it has the power or authority to guide, manage or

---

source of law for the claimed position or to make a particular argument in support of it. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). In this case, in broad terms, the legal issue presented by DOR is whether WGA's property is taxable. When viewed in that light, ORS 261.050 merely is a source of law for DOR's position. Moreover, even if we consider the applicability of ORS 261.050 as a separate and distinct issue, that issue was raised adequately below inasmuch as CPUD's use and control of WGA's property clearly was set forth as a basis for taxation of that property in DOR's answer to WGA's complaint. Finally, given that the ORS 261.050 argument purely is a legal one and, therefore, that a Tax Court ruling on it would, in any event, have been reviewed in this court for an error of law, our consideration of the issue at this stage is not inconsistent with the purposes of fairness and efficiency upon which the preservation requirement is based.

direct it, or even if it can "restrain" another entity's "domination" of that property.

In this case, it is clear that, at the very least, CPUD has the power to restrain EWEB from exercising control over the facility in any manner that CPUD deems objectionable. Three of WGA's six board members are appointed by CPUD and serve at CPUD's pleasure. Although they may not have the power affirmatively to ensure that CPUD's policy initiatives are carried out, they can block any action by EWEB that CPUD disagrees with. CPUD, therefore, has the level of control necessary to enable it to protect and promote its interests. For that reason, we hold that the WGA's electrical cogeneration facility is "controlled" by a people's utility district, CPUD, and is taxable under ORS 261.050.[5]

It follows that the Tax Court's conclusion that WGA meets the statutory definition of a municipal corporation and that it possesses typical governmental characteristics is not dispositive. ORS 307.090(1) only renders the property of government entities immune from taxation "except as provided by law." Even assuming that WGA is a municipal corporation whose property otherwise would be immune from taxation, ORS 261.050 is a law providing for the taxation of WGA's property.[6] The tax immunity conferred by ORS 307.090(1) is unavailable to it.

Finally, we reject WGA's argument that taxation of WGA property would defeat the legislative intent behind ORS 190.010, which authorizes the creation of intergovernmental corporate entities like WGA. WGA asserts that the legislature intended to promote economy and efficiency in local government by reducing financing costs for public projects, and that taxation of WGA effectively would increase the cost of financing the project. Yet, exemption from property

---

[5] WGA argues that the word "control" in ORS 261.050 does not mean *joint* control with another entity such as EWEB, but instead means *direct* control. That argument is not well taken. The wording of the statute is not restricted, either by text or context, in the way that WGA suggests. Instead, its wording accommodates *either* the affirmative power to act *or* the negative power to prevent action.

[6] WGA argues that that result violates due process, because it effectively imposes a tax on CPUD. It does not. The *property* is subject to tax under ORS 261.050. As required by ORS 308.115(2), that property properly was assessed and taxed in the name of the legal property owner, WGA.

tax for property owned by intergovernmental entities is not inherent in the legislative policy of economy and efficiency. Nothing in ORS 190.010 indicates that the legislature intended by that statute to exempt all property owned by intergovernmental entities, regardless of the tax status of the forming parties. Indeed, it is apparent that taxation of property controlled by a people's utility district is not necessarily inconsistent with that legislative policy. For example, it would be absurd to conclude that property controlled by two people's utility districts would be exempt from taxation, if they simply created an intergovernmental entity and then transferred the property to it, although the same property would have been taxable, had it remained the separate property of each district.

The Tax Court erred in granting summary judgment to WGA. In light of its conclusion that WGA is a municipal quasi-corporation immune from taxation under ORS 307.090(1), the Tax Court did not reach the question whether the WGA property should be taxed in full or whether its tax liability should be limited based on the extent of CPUD's control over that property. We remand the case to the Tax Court for a determination whether to apportion WGA's tax liability based on CPUD's proportional interest in the property and, if such apportionment is appropriate, the extent of that proportional interest.

The judgment of the Tax Court is reversed. The case is remanded to the Tax Court for further proceedings.